HARLAN S. MINER, PROSECUTOR, v. MARY LARNEY AND THE MAYOR AND COMMON COUNCIL OF THE CITY OF GLOUCESTER, RESPONDENTS.

Submitted December 3, 1914—Decided May 13, 1915.

1. It is the duty of a municipal body solely invested by law with the power to grant licenses for the sale of intoxicating liquors, upon compliance with statutory requirements, to afford to parties making lawful objections on points which, if sustained, would oust the specific jurisdiction to grant a license in a particular case, a reasonable opportunity to substantiate by evidence their grounds of objection.

2. Such duty is not performed by an attempted delegation of it to a subordinate body not authorized by law to deal with the matter.

3. The signatures of twelve reputable freeholders to a recommendation for a license under the Inns and Taverns act (*Comp. Stat.*, p. 2890) should normally be their personal signatures, or if signed by another under their authority the fact should appear on the certificate and the authority should be shown.

4. The customary affidavit that the certificate is "signed" by the requisite number of freeholders is naturally understood to mean that such freeholders signed it themselves, and not that they merely authorized someone else to do so for them.

On *certiorari.*

Before Justices SWAYZE, PARKER and KALISCH.

For the prosecutor, *Bleakly & Stockwell.*

For the respondents, *Stackhouse & Kramer.*

The opinion of the court was delivered by

PARKER, J.   The questions raised by this writ relate to the legality of a license for the sale of intoxicating liquor, granted by the mayor and common council of Gloucester City to Mary Larney on June 11th, 1914.   The reasons filed allege, among other things, that the Mary Larney application was fraudulent and in effect a new application of her brother, John Larney, to whom a license had been refused on May

28th; that the Mary Larney application was not accompanied by the *bona fide* recommendation of the requisite number of freeholders; and that although both these points were set up in a written remonstrance which reached the licensing body in due season and appears on its minutes, the license was granted over the remonstrance without an opportunity being afforded to substantiate its objections. If it appear that facts existed and were alleged by parties lawfully interested, which deprived the council of jurisdiction over the matter, and that said parties were denied an opportunity to prove them, the action of the council was illegal and should be set aside. *Dufford* v. *Nolan,* 46 *N. J. L.* 87.

The essential facts are these: By section 14 of the charter of Gloucester City (*Pamph. L.* 1868, *p.* 103) it is enacted that the "mayor and common council, or a majority thereof, in council convened, shall have the sole, only and exclusive right and power to grant licenses under the common seal of said city to all and every innkeeper and retailer of spirituous liquors residing in said city, in the like manner and on the same terms and conditions as may now be done by the Court of Common Pleas in this state, except only that they may grant such license for any term not exceeding one year, as they may deem best."

On May 13th, 1914, John Larney applied to the mayor and common council (hereafter called for convenience the council) for a license to sell at certain specified premises. This application was referred to a committee of council called the "license committee" whose authority does not appear. That committee reported it back on May 28th, without recommendation, and on that date council by vote refused the license, and a motion to reconsider was lost. The preliminary deposit of license fee made by John Larney was transferred to his sister, Mary Larney, and on June 3d an application by her for a license at the same place was presented to council. This was referred on June 4th to the license committee at a regular meeting, and the chairman announced that the committee would meet on June 9th between seven and eight o'clock at the city hall to hear re-

monstrances, &c. The committee met accordingly, and a number of remonstrances against various licenses, including one relating ·to that in question, having been already filed, were returned by· the committee with its report. The remonstrance in this case specified, among other things, that the applicant was not recommended by the required number of freeholders; that license to applicant's brother at the same place had just been refused; that the signatures were not properly secured and the application was not properly or in good faith signed by the requisite number of freeholders; that the application was fraudulent and made to evade the· law; and that no time had been publicly fixed or notice given of the time and place when and where the "mayor and common council of Gloucester City" would hear said application and remonstrance, and pass upon and determine the same as required by law. Some of the remonstrants attended this committee meeting, but no oral hearing was had. The committee did not call for evidence of the facts set up in the remonstrance, nor was any evidence offered. The applications and remonstrances were reported back to council without recommendation. The report states that "signers were checked by the engineer." At an adjourned meeting of council on June 11th, the report was received and a motion to grant the license was put and carried without hearing, and, so far as appears, without debate. Apparently the council considered its duty to have been performed by the session of the committee, and that no further public hearing was called for.

This action of the council in delegating. its authority to a committee cannot be supported. By the express language of the charter, the power and the responsibility are theirs and theirs alone. In *Green* v. *Cape May*, 41 *N. J. L.* 45, 48, the award of a contract of purchase through a member of a committee was supported on the sole ground of a subsequent ratification by the council itself. In *Foster* v. *Cape May*, 60 *Id.* 78, a contract for street lighting was set aside on the ground that council could not delegate its charter authority to a committee. A similar decision was rendered

by the Court of Errors and Appeals in *American Heating Co.* v. *Board of Education,* 81 *Id.* 423, where the board undertook to delegate its power of contracting to the president and clerk. A similar rule should, *a fortiori,* apply to proceedings judicial and *quasi*-judicial; and in fact was applied by this court in a case of revocation of a license for violation of an ordinance. *Lambert* v. *Rahway,* 58 *Id.* 578, where a number of cases are collected. There is no substantial difference, for the application of this principle, between a proceeding to revoke a license by adjudging a forfeiture, and an ascertainment by the licensing body having jurisdiction of the subject-matter, whether jurisdiction of the proceeding has been conferred by the existence of the statutory conditions precedent. It was the duty of the council, therefore, upon a challenge of its jurisdiction of the application, itself to afford a hearing and itself to hear and decide the matter, and not to attempt to delegate to a subordinate body the duty of making an investigation essentially judicial in its character.

But it is urged that prosecutor and the other remonstrants failed to proffer any evidence in support of the remonstrance before the committee, pursuant to the announcement that it would hear such evidence, or to request a hearing before the council; and the cases of *Smith* v. *Elizabeth,* 46 *N. J. L.* 312; *Parnes* v. *Board of Excise,* 82 *Id.* 285, and others, are cited in support of this position. Neither case is authority for the proposition that a remonstrant, after making his remonstrance and therein specifying his facts, is required on peril of losing his right to attack the grant of a license by *certiorari,* to go to the licensing body and demand a hearing. The invariable practice under the Inns and Taverns act, which is the general guide in matters of practice relating to this subject, is for the court to announce a stated time and place for hearing; and council evidently recognized this duty and thought it performed when announcement of the committee meeting was made. But as we have seen, that was not a lawful hearing, and none other was afforded. In effect a demand for

hearing by council was made in the remonstrance, the pur-
port of which has been stated above. We consider that prose-
cutor's attack should not fail on this ground. He is entitled
to invoke the writ of *certiorari*, and as the council in matters
of this kind is a "special statutory tribunal" (*Smith* v. *Eliza-
beth*, 46 *Id.* 315), and the opportunity was not forthcoming
to present his facts before that tribunal, he may present them
to this court. *Austin* v. *Atlantic City*, 48 *Id.* 118.

This brings us to the merits; and on this branch of the
case we find the application invalid on several grounds. In
the first place it is made plain by the depositions taken under
rule herein, that a majority of the signatures ostensibly of
the freeholders required, were in fact affixed by the applicant,
or by her brother or by some other person, and not by the
freeholders named. Some of these freeholders testified that
they authorized such signatures to be made for them; one
or two, that they subsequently ratified them.

We think that such a proceeding does not satisfy the
statute. The Inns and Taverns act (*Comp. Stat., p.* 2890)
which governs the Court of Common Pleas, whose procedure
is adopted in the Gloucester charter, requires twelve reputable
freeholders to "certify" to the court the reputation of the
applicant, and other jurisdictional facts; by section 3 they
are to "sign" their recommendation; and anyone imposing
on the court "by signing to an undeserved character, or by
describing a situation not true, or in any other manner
* * * shall be deemed guilty of a misdemeanor, and on
conviction shall be fined," &c. To hold that such a certificate
may be made in this loose way, by mere oral consent for
the applicant or someone for him to sign the names of
certifying freeholders and present them as though actually
signed by themselves, would defeat the purpose of the statute.
For there is no statutory requirement that the signers shall
be sworn, or that they shall acknowledge their signatures be-
fore an officer, or even that the signatures shall be attested
by a subscribing witness; so that in case of any question
as to the genuineness of the signatures, or of prosecution
for a false certificate, the handwriting of the signer would be

the principal evidence to the court that the certificate had in fact been made. If such evidence be not available, how is the court to know in any case whether the signatures appearing on the application are the actual signatures of the parties named, or signed by someone else; and if the latter, whether they were duly authorized? It is safe to say that if such a practice as that shown in the present case were to prevail, the court would be at the mercy of every unprincipled applicant that chooses to concoct a false recommendation and of every "signer" that honestly or otherwise denies having given authority to sign for him, or would be compelled before licensing to inquire by examination of witnesses under oath, as to the genuineness or the authorization of each signature. We do not find it necessary to decide whether actual signature by the hand of the certifying freeholder is legally necessary. So to hold might result in disqualifying lawful freeholders who for some physical or other reason were unable to write; but the least that should be said is that where for sufficient reason the freeholder does not himself make the signature, the fact that it is made by another for him should be indicated on the face of the certificate in some way that will apprise the court of this fact and enable it to make such preliminary inquiry as to authenticity as it may desire to make.

Intimately connected with this is the second ground for adjudging this license invalid, viz., that the affidavit appended to the application was a fraud on the licensing body and on the public. It is not required by the statute (*Heintz* v. *Union Quarter Sessions,* 45 *N. J. L.* 523), but the practice is of long standing, and such an affidavit, as remarked in *Dufford* v. *Nolan,* 46 *Id.* (at *p.* 90) : "is eminently proper to be made, and may be received by the court (or licensing body) as making out a *prima facie* case of jurisdiction upon which, in the absence of contradiction, they may safely act." It is notorious that the licensing tribunals seldom or never go back of such an affidavit on the question of authenticity of signatures, but accept it as sufficiently establishing this point. But it is obvious that when such an affidavit states

in the customary form, and as this one does, "that said certificate is *signed* by at least twelve reputable citizens and freeholders of said Gloucester City" the licensing body will accept, and should normally be expected to accept, this language as meaning that the freeholders had themselves affixed their signatures, and not simply told the applicant or some relative or agent of the applicant, to make them responsible as certifiers to the court or board and amenable to a penalty for a false certificate. So we hold that the affidavit in this case was a fraud as tending to induce the court to believe what was in fact untrue.

Apart from these reasons, the applicant failed to present the certificate of twelve freeholders. There were fourteen names in all. Our examination of the evidence satisfies us that one freeholder whose name was signed had died before the application came in; another had given permission to use his name in a prior license several years before, but this time the permission was given by his wife; a third gave permission to sign the John Larney application but Mary Larney's was signed with his name without his knowledge, and though on his examination he said "she was as good as him" this subsequent ratification cannot be received as tantamount to an original certificate. As to a fourth, the testimony to his signature was acknowledged by the witness to be a mere guess, and the alleged signer was not produced.

It follows that the application in this case was not recommended in the manner required by law, by the requisite number of reputable freeholders, and for the reasons given the award of the license must therefore be set aside, with costs.